UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

JESUS HILARIO GARCIA,  :

  Petitioner  :  CIVIL ACTION NO. 3:26-1079

  v.  :  (JUDGE MANNION)

CRAIG LOWE,  :

  Respondent  :

## MEMORANDUM

Pending before the Court is Jesus Hilario Garcia's ("Petitioner") petition for a writ of habeas corpus pursuant to 28 U.S.C. §2241. (**Doc. 1**). For the reasons stated herein, the petition will be **GRANTED** insofar as it requests a bond hearing.

## I. BACKGROUND

Petitioner is a native and citizen of Mexico. (Doc. 7-2 at 2). On March 15, 2012, he was encountered by the Immigration and Customs Enforcement ("ICE") Enforcement and Removal Operations ("ERO") in Pheonix, Arizona. *Id.* at 4. Petitioner was granted voluntary removal and returned to Mexico on March 17, 2012. *Id.* at 4. Petitioner then entered the United States at an unknown location on an unknown date. *Id.* at 3.

On September 1, 2020, the Scranton, Pennsylvania, Police Department arrested Petitioner and charged him with Driving Under the

Influence. *Id.* at 4. On September 30, 2020, the Scranton, Pennsylvania, Police Department arrested Petitioner and charged him with Public Drunkenness and Resisting Arrest, which were withdrawn. *Id.* at 4. On October 15, 2020, ICE ERO Philadelphia arrested Petitioner in Scranton, Pennsylvania and charged him as removable pursuant to the Immigration and Nationality Act ("INA") §212(a)(6)(A)(i). *Id.* at 4, (Doc. 7-3 at 3, 8). On March 30, 2021, Petitioner was released on his own recognizance. (Doc. 7-2 at 4). On October 12, 2021, Petitioner pleaded guilty to the DUI and was sentenced to three days of incarceration and ordered to pay fines and costs. *Id.*

On March 24, 2025, Immigration Judge Joseph Scott found Petitioner removable pursuant to INA 212(a)(6)(A)(i). (Doc. 7-4 at 2). While Judge Scott denied Petitioner's applications for Asylum, Withholding of Removal under INA §241(b)(3), and Withholding of Removal under the Convention Against Torture, he granted Petitioner's application for post-conclusion voluntary departure pursuant to INA §240B(b). *Id.* at 3. If Petitioner failed to depart by May 23, 2025, Petitioner was alternatively ordered removed to Mexico. *Id.* On April 23, 2025, Petitioner filed an appeal, which remains pending. (Doc. 7-5).

On November 16, 2025, the Dickson City, Pennsylvania, Police Department cited Petitioner for Driving Without a License, and Suspended Vehicle Registration, to which Petitioner pleaded guilty. (Doc. 7-2 at 4). On February 13, 2026, ICE ERO Philadelphia officers were conducting targeted enforcement operations in Scranton, Pennsylvania, when they came in contact with Petitioner. (Doc. 7-2 at 3). Petitioner was transported to Pike County Prison in Lords Valley, Pennsylvania, where he has since remained. (Doc. 7-3 at 2).

On April 24, 2026, Petitioner filed the present petition for a writ of habeas corpus. (Doc. 1). On May 15, 2026, Respondent filed his response to the petition. (Doc. 7). On June 5, 2026, Petitioner filed a traverse to the Government's Response. (Doc. 8). The petition is now ripe for disposition.

## II.    LEGAL STANDARD

Under 28 U.S.C. §2241, district courts have the authority to grant writs of habeas corpus where a petitioner is "in custody under or by color of the authority of the United States . . . in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §2241(c)(1), (3).

Furthermore, "[i]t is well established that a federal habeas corpus petitioner generally has the burden of proving facts entitling him to a discharge from custody." *Goins v. Brierley*, 464 F.2d 947, 949 (3d Cir. 1972).

However, "[w]ith respect to certain factual issues, the burden of proof may be shifted to the state because of specific policy considerations or because the available evidence is likely to be in the hands of the state." *Id.*

### III.    DISCUSSION

#### a. Jurisdiction

The Court's authority to hear noncitizen habeas petitions under 28 U.S.C. §2241 is limited is some circumstances by 8 U.S.C. §§1252(g), (b)(9), and (a)(2)(B)(ii).

§1252(g) states that "[e]xcept as provided in this section and notwithstanding any other provisions of law . . . no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. §1252(g). Here, the Court's jurisdiction is not barred by §1252(g) as the petition neither challenges the commencement of removal proceedings, the Attorney General's decision to adjudicate, nor the execution of a removal order. *See Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (finding that §1252(g)(2) divests the court of jurisdiction "only to [these] three discrete actions").

§1252(b)(9) states that "[j]udicial review of all questions of law and fact . . . arising from any action taken or proceedings brought to remove an alien

- 4 -

from the United States . . . shall be available only on judicial review of a final order [of removal]." 8 U.S.C. §1252(b)(9). Here, the Court's jurisdiction is not barred by §1252(b)(9) as the petition does not seek review of any law or fact arising from a removal proceeding. *See E.O.H.C. v. Sec'y United States Dept. of Homeland Sec.*, 950 F.3d 177, 186 (3d Cir. 2020) (finding that §1252(b)(9) "does not reach claims that are independent of, or wholly collateral to, the removal process[.]").

§1252(a)(2)(B)(ii) prohibits district courts from reviewing discretionary detention choices of the Attorney General or Secretary of Homeland Security. 8 U.S.C. §1252(a)(2)(B)(ii). Here, the Court's jurisdiction is not barred by §1252(a)(2)(B)(ii) as the petition does not challenge a discretionary detention choice. *See Patel v. O'Neil*, 2025 WL 3516865, at *3 (M.D.Pa. Dec. 8, 2025) ("section 1252(a)(2)(B)(ii) is inapposite because Respondent's 'statutory detention power is "not a matter of discretion" to which §1252(a)(2)(B)(ii) applies[.]'") (internal citations omitted).

Finally, courts considering the issue of whether a petitioner is being wrongfully detained without a bond hearing "have almost universally held that they have jurisdiction," and, therefore, that §§1252(g), (b)(9), and (a)(2)(B)(ii) do not apply. *Patel*, 2025 WL 3516865 at *3.

- 5 -

### b. Exhaustion of administrative remedies

"A petitioner challenging agency action must generally first exhaust administrative remedies; however, in habeas proceedings, 'exhaustion exists as a judicially created doctrine applied at the Court's discretion.'" *Vadel v. Lowe*, 2025 WL 3772059, at *3 (M.D.Pa. Dec. 31, 2025) (quoting *Kashranov v. Jamison*, 2025 WL 3188399, at *3 (E.D.Pa. Nov. 14, 2025)). Here, further administrative review would be pointless, as Petitioner is detained under 8 U.S.C. §1225(b)(2)(A), which precludes immigration judges from holding a bond hearing. *See id.*; *see also Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025) (holding that an immigration judge "has no authority to consider bond requests for any person who entered the United States without admission").

### c. 8 U.S.C. §1226(a) applies to Petitioner

Respondent argues that Petitioner is subject to mandatory detention pursuant to 8 U.S.C. §1225(b)(2)(A), which does not allow for courts to hold a bond hearing. Petitioner, on the other hand, argues that his detention under §1225(b)(2)(A) violates the INA and his procedural due process rights, and that he is subject to discretionary detention under 8 U.S.C. §1226(a), which would entitle him to a bond hearing.

Courts nationwide, including this Court, have been dealing with the very issue presented in this case. Namely, whether a noncitizen habeas

petitioner who has been residing in the United States for some time is subject to the mandatory detention provision of §1225(b)(2)(A). In *Cunha v. Freden*, the United States Court of Appeals for the Second Circuit considered the issue and ruled that it is "clear that Section 1226(a) governs detention of noncitizens like Petitioner. Section 1225(b)(2)(A) does not apply to such noncitizens, who are present in the United States after entering the country without inspection and admission, and who were not apprehended while entering the country or shortly thereafter." 2026 WL 1146044, *2 (2d Cir. Apr. 28, 2025). In reaching this conclusion, the court noted that its "holding is consistent with the decisions of over 370 district judges across the Nation who (as of mid-February 2026) have also rejected the government's position. In other words, over ninety percent of district judges have sided with Petitioner." *Id.* at *4.

Since *Cunha*, the Sixth and Eleventh Circuits have joined the Second Circuit in ruling that §1226(a) applies. *Lopez-Campos v. Raycraft*, 2026 WL 1283891 (6th Cir. May 11, 2026); *Hernandez Alvarez v. Warden, Federal Detention Ctr. Miami*, 2026 WL 1243395 (11th Cir. May 6, 2026). Additionally, the Seventh Circuit has held that a petitioner is likely to succeed on the merits of a claim for wrongful detention under 8 U.S.C. §1225(b)(2)(A), however, the court did not issue a precedential ruling on the issue. *See*

- 7 -

*Castañon-Nova v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048 (7th Cir. 2025) ("*Castañon-Nova I*"); *see also Castañon-Nova v. U.S. Dep't of Homeland Sec.*, 2026 WL 1223250 (7th Cir. May 5, 2026) ("*Castañon-Nova II*"). The *Castañon-Nova* Court's contemplation of the issue further supports the consensus interpretation. The undersigned has also consistently joined in this consensus interpretation and will continue to do so. Indeed, the Government notes that it "recognizes that this Court and other jurists of this District have rejected Respondent's arguments . . . regarding 8 U.S.C. § 1225(b)." (Doc. 7 at 2).

For §1225(b)(2)(A) to apply: "(1) there must be an 'examining immigration officer' who determines; (2) that an 'applicant for admission'; (3) is 'seeking admission'; and (4) 'not clearly and beyond a doubt entitled to be admitted.'" *Bethancourt v. Soto*, 2025 WL 2976572, at *5 (D.N.J. Oct. 22, 2025) (citing 8 U.S.C. §1225(b)(2)(A)).

The consensus view of the courts is that "seeking admission" requires "active and ongoing conduct, such as physically attempting to come into the United States at a border or port of entry." *Gonzalez Centeno v. Lowe*, 2026 WL 94642, at *3 (M.D.Pa. Jan. 13, 2026) (quoting *Quispe v. Rose*, 2025 WL 3537279, at *5 (M.D.Pa. Dec. 10, 2025)); *see also Cunha*, 2026 WL 1146044 at *8 ("When the statute says, 'alien seeking admission,' it therefore refers to

a noncitizen who is seeking admission *right now*, not one who sought admission in the past but no longer is[.]") (emphasis in original). An individual affirmatively "seeking admission" should not be confused as being the same as an "applicant for admission." *See Patel*, 2025 WL 3516865 at *5 (finding that such an interpretation of "seeking admission" violates the rule against surplusage). Therefore, because "seeking admission" applies to individuals in an affirmative act, §1225(b)(2)(A) does not apply to "noncitizens . . . who have resided in the United States for years." *Id.* Furthermore, while the "entry fiction" doctrine:

> "[A]llows the government to treat physical entrants as if still 'on the threshold' if they are 'detained shortly after lawful entry' . . . no one could seriously contend that it applies to a noncitizen like [the petitioner] who has been living in the United States for [an extended period of time]. Under settled Supreme Court precedent, 'aliens who have once passed through our gates, *even illegally*, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law.

*Cunha*, 2026 WL 1146044, at *15 (emphasis in original).

As for §1226(a), it allows for the Attorney General to arrest and detain a noncitizen "pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. §1226(a). Pending that decision, the Attorney

General "(1) may continue to detain the arrested alien; and (2) may release the alien on . . . bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or . . . conditional parole." 8 U.S.C. §1226(a)(1)-(2). Where an alien is detained under §1226(a), they are still entitled to a bond hearing where they can argue why they should be released from detention pending a final order of removal. *See Johnson v. Guzman Chavez*, 594 U.S. 523, 527 (2021); *see also Borbot v. Warden Hudson County Correctional Facility*, 906 F.3d 274, 277-80 (3d Cir. 2018) (holding that individuals detained under §1226(a) are entitled to a bond hearing, but not entitled to a second bond hearing after their first has been denied).

Here, while it is not entirely clear when Petitioner returned to the United States after his initial removal, Petitioner has been living in the United States since at least September 2020. (Doc. 7-2). He was taken into immigration custody on February 13, 2026. *Id.* at 2. Therefore, he is not "seeking admission" as defined by §1225(b)(2)(A). Accordingly, 8 U.S.C. §1226(a) applies.

### d. Petitioner's detention under 8 U.S.C. §1225(b)(2)(A) does not violate due process

The Fifth Amendment protects against deprivation "of life, liberty, or property without due process of law." U.S. Const. amend. V. This protection

"applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

To determine whether a habeas petitioner's detention under §1225(b)(2)(A) violates due process, courts weigh three factors: (1) "the private interest that will be affected by the official action[;]" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards[;]" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

Application of the factors reveals no violation of due process. First, the "most elemental of liberty interest[s]—the interest in being free from physical detention—"is implicated. *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). Second, Petitioner's erroneous detention under §1225(b)(2)(A) comes with a lack of procedural safeguards, including the opportunity for a bond hearing, which makes it extraordinarily difficult to challenge his detention. *Cunin v. McShane*, 2025 WL 3542999, at *2 (M.D.Pa. Dec. 10, 2025) ("There is a certainty—not merely a risk—that the failure to grant [petitioner] a bond hearing would unlawfully deprive him of the opportunity to make the case for

- 11 -

his release and incarcerate him indefinitely[.]"). However, third, the Government has an interest in detaining noncitizens "to ensure [their] appearance . . . at future immigration proceedings and to prevent danger to the community." *Quispe*, 2025 WL 3537279, at *7 (citing *Zadvydas*, 533 U.S. at 690).

The Court does not doubt that Petitioner would attend future immigration proceedings. Petitioner currently has an appeal of an order of removal pending, providing him strong incentive to appear at future proceedings, and his common law wife resides in the United States, giving him reason not to flee. (Docs. 7-5, 8). Additionally, Petitioner's common law wife is expecting another baby. (Doc. 8 at 2). However, it appears to the Court that the Government may have an interest in detention "to prevent danger to the community." The Government notes, and Petitioner admits, that Petitioner was arrested and charged with Driving Under the Influence. (Docs. 7-2 at 3, 8 at 2). Additionally, Petitioner claims that he was convicted of an additional Driving Under the Influence charge in 2025, (Doc. 8 at 3), while Respondent contends that Petitioner was convicted of Driving Without a License and Suspended Vehicle Registration, (Doc. 7-2 at 4). This Court has little substantive information regarding the underlying charges, and the extent to which Petitioner has posed a danger to the community while driving

under the influence of alcohol or other controlled substances. The circumstances surrounding Petitioner's alleged criminal activity would be better adjudicated at a bond hearing before an Immigration Judge, who would have greater access to information that could resolve any factual disputes. Furthermore, Petitioner will have the opportunity to raise these same arguments at his bond hearing.

Thus, upon weighing of the *Mathews* factors in light of the information available to it at this time, the Court finds that Petitioner's continued detention under §1225(b)(2)(A) does not violate his procedural due process rights as the Government may have an interest in his continued detention to prevent danger to the community. Therefore, while Petitioner is entitled to a bond hearing under §1226(a), where he can argue for his release, he is not entitled to release by this Court at this time.

## IV.    CONCLUSION

For the foregoing reasons, Petitioner's petition for a writ of habeas corpus under 28 U.S.C. §2241 will be **GRANTED** insofar as it requests a bond hearing. The Government will be required to provide Petitioner with a bond hearing under 8 U.S.C. §1226 within fourteen days of the Court's accompanying order.

**MALACHY E. MANNION**
**United States District Judge**

**DATE:** 6/11/26
26-1079-01

- 14 -